Filed 4/24/26  In re E.E. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.E. et al., Persons Coming Under the Juvenile Court Law. | B348649 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.B. et al., <br><br> Defendants and Appellants. | (Los Angeles County Super. Ct. No. 18CCJP02401C-D) |

APPEALS from orders of the Superior Court of Los Angeles County, George A. Turner, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant C.B.

Janette Cochran, under appointment by the Court of Appeal, for Defendant and Appellant C.E.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

C.E. (mother) and C.B. (father) separately appeal from the juvenile court's orders that denied their petitions under Welfare and Institutions Code section 388[1] and terminated parental rights over their two children, E.E. (born November 2014) and J.E. (born March 2017) (collectively, minors).  In separate briefs, both parents contend the court abused its discretion when it denied mother's and father's respective section 388 petitions after a hearing with testimony and denied application of the parental relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(B)(i).  The Los Angeles County Department of Children and Family Services (Department) contends that neither parent has shown that the juvenile court abused its discretion.  We affirm the August 18, 2025 orders denying both parents' section 388 petitions and terminating parental rights.

The parties are familiar with the facts and procedural history, and our opinion does not meet the criteria for publication.  (Cal. Rules of Court, rule 8.1105(c).)  We therefore resolve this appeal by memorandum opinion pursuant to Standard 8.1 of the Standards of Judicial Administration and consistent with constitutional principles.  (Cal. Const., art. VI, § 14 ["Decisions of the Supreme Court and courts of appeal that

_____

[1] All further statutory references are to the Welfare and Institutions Code.

determine causes shall be in writing with reasons stated"]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1263, fn. omitted [three-paragraph discussion of issue on appeal satisfies constitutional requirement because "an opinion is not a brief in reply to counsel's arguments.  [Citation.]  In order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"].)

## DISCUSSION

### A.    Section 388 Petitions

"Section 388 allows a parent or other person with an interest in a dependent child to petition the juvenile court to change, modify, or set aside any previous order . . . .  The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child."  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)  Where reunification services are terminated, "the parents' interest in the care, custody[,] and companionship of the child are no longer paramount.  Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation] . . . ."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  A court considering a child's best interests in the context of a section 388 petition "must recognize this shift of focus . . . ."  (*Ibid.*)

"[B]est interests is a complex idea" that requires consideration of a variety of factors.  (*In re Kimberly F.* (1997) 56

3

Cal.App.4th 519, 530.) In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case including "factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner." (*In re Mickel O., supra*, 197 Cal.App.4th at p. 616.) We review a juvenile court's ruling for abuse of discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [the decision on a section 388 petition "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion"].)

In the current case, the juvenile court found that mother and father had shown enough to support a finding of changed circumstances. For both parents, however, the court found it was not in minors' best interests to reinstate reunification services, particularly where both children were refusing to participate in visits with the parents.

We recognize that a determination of a child's best interests requires consideration of multiple factors. (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 530.) Here, however, neither parent has shown that the juvenile court abused its discretion in deciding it was not in minors' best interests to reinstate reunification services or permit unmonitored visits. Mother's opening brief simply attempts to recast the facts in a light favorable to mother, while ignoring the evidence that both parents had consistently demonstrated a negative tendency to push the boundaries of the rules, falsely stating they had custody

4

of the children in order to obtain subsidized housing, discussing case issues with the children, and encouraging the children to overstate their connection to parents. We are unconvinced by mother's conclusory statement at the end of her argument about the section 388 petition, that "[g]ranting Mother's request for further reunification services was in Minors' best interests."

Father's brief attempts to show an abuse of discretion through an inapposite comparison to *In re J.C.* (2014) 226 Cal.App.4th 503, arguing that, while the mother in *J.C.* filed a section 388 petition seeking to have her child returned to her custody, which would disrupt the child's bond with her caregiver, here, father was not seeking to have minors removed from maternal aunt, but rather seeking additional reunification services in order to advance minors' need for permanency and stability. Father's argument is flawed because it does not account for the severity of the trauma minors suffered, and how that trauma resulted in ongoing anxiety for E.E., and J.E., who felt unsafe even to visit parents. Further, both parents had already received 18 months of reunification services by the time of the hearing on the section 388 petitions, and parents' visits over the course of the case had resulted in increasing distress for the children, rather than providing them with any comfort or confidence in parents' ability to meet the minors' needs. Nonetheless, at the section 388 hearing in August 2025, more than two years after minors were removed from parental custody based on domestic violence and abuse, father testified that it made no sense to him that his son was saying he didn't want visits because he needed time to heal. As the court pointed out, it believed the children's statements and testimony that they were no longer willing to have visits with parents, and so it would not

be in their best interests to require visits or provide services absent such visits.  Father too, has failed to show that the juvenile court abused its discretion in determining that it was not in the children's best interests for parents to receive additional reunification services.

## B.    Parental Relationship Exception

The express purpose of section 366.26 is "to provide stable, permanent homes" for dependent children.  (§ 366.26, subd. (b).)  If the juvenile court has decided to end reunification services, adoption is the legislative preference.  (§ 366.26, subd. (b)(1).)  " 'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' "  (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)  Guardianship is a less preferable option, because it " 'falls short of the secure and permanent future the Legislature had in mind for the dependent child.' "  (*Ibid.*)

Once it has been determined that a minor is adoptable, "the court must order adoption and its necessary consequence, termination of parental rights," unless a parent can demonstrate one of the exceptions set forth in section 366.26 applies.  (*In re Celine R.*, *supra*, 31 Cal.4th at p. 53; see § 366.26, subd. (c)(1); *In re Caden C.* (2021) 11 Cal.5th 615, 625 (*Caden C.*).)  The specified circumstances in section 366.26, subdivision (c)(1)(B) are "actually, *exceptions* to the general rule that the court must choose adoption where possible."  (*In re Celine R.*, at p. 53.)  They " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' [Citation.]  At this stage of the dependency proceedings, 'it becomes inimical to

6

the interests of the minor to heavily burden efforts to place the child in a permanent alternative home.' [Citation.] The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*Ibid*.; see *In re A.L.* (2022) 73 Cal.App.5th 1131, 1150.)

Parents seek to show that it was an abuse of discretion to deny application of the parental relationship exception, which permits the selection of another permanent plan if the "parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The parent has the burden of establishing this exception. (*In re A.L.*, *supra*, 73 Cal.App.5th at p. 1153.) The exception requires a parent to establish, by a preponderance of the evidence: (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) The "language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Id*. at p. 630.) When the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued

parent-child relationship, the court should order adoption. (*Id.* at pp. 633–634.) However, if " 'severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights." (*Id.* at p. 633.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a parental relationship for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.) We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion. (*Id.* at p. 640.)

In the case before us, the juvenile court found that parents had maintained visits as regularly as permitted, even accounting for minors' more recent refusal to attend visits after April 2025. (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) Considering whether the minors had a substantial emotional attachment with parents, the court found evidence of such a bond, and that at least to some extent, that attachment was positive. The court acknowledged the complexity of the relationship between parents and minors, in light of the history of domestic violence, and the extent to which E.E. showed symptoms of PTSD based on his exposure to violence when the family was living together. Nonetheless, because there was some level of a positive bond, the court found in favor of parents on the second *Caden C.* factor. (*Ibid.*)

Parents contend that the court abused its discretion when it found against them on the third *Caden C.* factor. The juvenile court found that the benefits of adoption outweighed any detriment that the children might suffer from ending the

parental relationship. The Department's reports and testimony by both minors demonstrated that their relationship with maternal aunt, who was their prospective adoptive parent, was positive and beneficial. Minors testified that even understanding that adoption could result in no contact with their parents, they still wanted to be adopted by maternal aunt. Under the circumstances, we find the juvenile court did not abuse its discretion in finding that the benefits of permanency through adoption would outweigh the benefit of preserving minors' relationship with mother or father.

## DISPOSITION

The juvenile court's August 18, 2025 orders denying the Welfare and Institutions Code section 388 petitions filed by mother and father, as well as its order terminating parental rights under Welfare and Institutions Code section 366.26 on the same date, are affirmed.

NOT TO BE PUBLISHED.

MOOR, J.

WE CONCUR:

BAKER, Acting P. J.

KIM (D.), J.

10